HOUSTON & T. C. R. CO. et al. v. STOREY et al.

(Circuit Court, W. D. Texas, Austin Division. December 3, 1906.)

1. CARRIERS—SUIT TO ENJOIN ENFORCEMENT OF RATES—DEMURRER.

A suit to enjoin the enforcement of railroad rates established by a state commission is of such general importance, and so far independent on the particular facts which may be developed by the proofs, that it will not be disposed of on demurrer, unless the bill is clearly insufficient.

2. SAME.

In a suit by a railroad company to enjoin the enforcement of rates established by a state commission as unreasonable and unjust, allegations in the bill respecting the amount of stock and bonds of complainant outstanding are pertinent.

3. SAME.

A schedule of railroad rates established by state authority is not unreasonably low as to a particular road because it will not enable the

company to accumulate from its net earnings a sinking fund for the payment of its indebtedness.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 19.]

4. SAME—STATE REGULATION OF RATES—CONSTITUTIONALITY.

The railroad commission of Texas, under authority from the Legislature, has power to fix railroad passenger rates not exceeding a maximum rate of three cents per mile, and may fix different rates for different carriers, subject to the constitutional restriction that it cannot deny to one carrier the equal protection of the laws by prescribing for it an unreasonably low and confiscatory rate, while other carriers similarly situated are permitted to charge a higher rate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 19.]

5. SAME.

A schedule of passenger rates prescribed for a railroad by a state commission cannot be declared invalid on an allegation that its enforcement will result in a reduction in rates by other roads, having the right to charge higher rates, at competitive points, which will work a discrimination between different localities.

6. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—CONTRACT WITH STATE—TEXAS STATUTE.

The provision of the Texas act of 1853 which empowers the Legislature to prescribe rates to be charged by railroad companies, subject to the limitation that no reductions shall be made in the rates of a company, unless it shall have made a net profit of 12 per cent. per annum during the previous 10 years, does not create a contract between the state and railroad companies subsequently chartered thereby, which deprives the state of the right to change such law or exempts the companies from the operation of future legislation respecting rates.

7. CARRIERS—REGULATION OF RATES.

Various grounds of demurrer considered in suits by railroad companies to enjoin the enforcement of schedules of rates prescribed by the railroad commission of Texas.

In Equity. On demurrer to bills.

Baker, Botts, Parker & Garwood, for Houston & T. C. R. Co., Houston, East & W. T. Ry. Co., Galveston, H. & S. A. Ry. Co., and Texas & N. O. R. Co.

Terry, Cavin & Mills, for Gulf, C. & S. F. Ry. Co.

N. A. Stedman, for International & G. N. R. Co.

E. B. Perkins, for St. Louis Southwestern Ry. Co. of Texas.

T. S. Miller and Fiset & McClendon, for Missouri, K. & T. Ry. Co. of Texas.

Thomas J. Freeman and W. L. Hall, for Texas & P. Ry. Co.

Newton N. Lassiter, for Chicago, R. I. & G. Ry. Co.

Spoontz, Thompson & Barwise, for Ft. Worth & D. C. Ry. Co.

C. H. Yoakum, for St. Louis, S. F. & T. Ry. Co. and Ft. Worth & D. Ry. Co.

Houston Bros., for San Antonio & A. P. Ry. Co.

R. V. Davidson, Atty. Gen. of Texas, and S. H. Cowan and R. J. Channell, for defendants.

MAXEY, District Judge. Separate bills have been filed by the following named railroads to enjoin the schedule of rates prescribed by the railroad commission, to wit: Houston & Texas Central Railroad Company; Gulf, Colorado & Santa Fé Railway Company; Inter-

national & Great Northern Railroad Company; St. Louis Southwestern Railway Company of Texas; Missouri, Kansas & Texas Railway Company of Texas; Texas & Pacific Railway Company; Houston, East & West Texas Railway Company; Galveston, Harrisburg & San Antonio Railway Company; Texas & New Orleans Railroad Company; Chicago, Rock Island & Gulf Railway Company; Ft. Worth & Denver City Railway Company; St. Louis, San Francisco & Texas Railway Company; Ft. Worth & Rio Grande Railway Company; San Antonio & Aransas Pass Railway Company. Demurrers are interposed by the defendants to all the bills; but, without making specific rulings in each case, it is thought that the disposition of the demurrers in the suit of the Houston & Texas Central Railroad Company and the views of the court hereinafter expressed as to special matters arising in other suits will enable counsel to prepare the proper orders in each case.

It is an elementary principle of pleading that facts well pleaded in a bill of complaint are admitted by demurrer to be true, and the determination of the truth or falsity of facts alleged must await the judgment of the court when the proofs are considered upon the final hearing of the cause. The bills filed by the various companies present questions of great importance to the plaintiffs and to the people, and it is conceived to be the duty of the court, in ruling upon demurrers to such bills, particularly special demurrers, to give to the allegations a liberal construction, to the end that the court may, upon consideration of all the proof submitted by the parties to the cause, intelligently decide whether the rates prescribed by the railroad commission are reasonable and just to the carriers and to the public. Along these lines it was said by the Supreme Court, in Covington, etc., Turnpike Co. v. Sandford, 164 U. S. 597, 17 Sup. Ct. 205, 41 L. Ed. 560:

"In short, each case must depend upon its special facts; and when a court, without assuming itself to prescribe rates, is required to determine whether the rates prescribed by the Legislature for a corporation controlling a public highway are, as an entirety, so unjust as to destroy the value of its property for all the purposes for which it was acquired, its duty is to take into consideration the interests both of the public and of the owner of the property, together with all other circumstances that are fairly to be considered in determining whether the Legislature has, under the guise of regulating rates, exceeded its constitutional authority, and practically deprived the owner of property without due process of law. What those other circumstances may be it is not necessary now to decide. That can be best done after the parties have made their proofs."

With these general observations the court will proceed to rule upon the demurrers in the order as they appear.

## General Demurrer.

The court is of the opinion that, taken as a whole, the bill states a cause of action, and the general demurrer is therefore overruled. See Reagan v. Farmers' Loan & Trust Company, 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014.

## Special Demurrers.

1. The first special demurrer goes to paragraph 3 of the bill, which alleges that the act of the Legislature of Texas creating the railroad commission is unconstitutional and void.

That the act of the Legislature, generally speaking, is a valid exercise of legislative power, there can be no doubt, since the same has been held to be constitutional by the Supreme Court of the United States. The demurrer is therefore sustained. Reagan Case, supra.

2. The second demurrer challenges the allegations of the bill, as contained in paragraph 3, that the rates, tariffs, classifications, schedules, etc., are void.

The question here attempted to be raised will be determined upon the final hearing. Hence the demurrer will be overruled.

3. The third demurrer objects to the allegations of paragraph 4 of the bill that the plaintiff is a carrier of interstate passengers and freight, etc., and that its duty in respect to such interstate traffic is voluntary.

The allegations of paragraph 4 may become material in determining the proper basis for rate prescription. The demurrer is overruled.

4. The fourth demurrer refers to paragraph 5 of the bill, and objects, in effect, that the value of stocks and bonds constitute no sufficient legal or authoritative basis or ground from which the court can determine the reasonableness or confiscatory character of the rates.

Every pertinent fact or circumstance which would have a tendency to enable the court to arrive at the fair value of the plaintiff's property should be considered in determining the reasonableness of the rates prescribed by the railroad commission. Thus it was said by the Supreme Court, in Smyth v. Ames, 169 U. S. 466, 467, 18 Sup. Ct. 418, 42 L. Ed. 819:

"We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And, in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth." San Diego, etc., Co. v. National City, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154.

In view of the ruling of the Supreme Court, the allegations are pertinent, and proof of the facts would be clearly admissible. The demurrer is overruled.

5. The fifth demurrer objects to so much of paragraphs 7 and 8 of the bill as set forth that certain decrees, alleged to have been entered by the Supreme Court of the United States, are res adjudicata, etc.

The contention of the defendants in this respect is correct; and, so far as the plaintiff attempts to plead the decrees mentioned as res adjudicata, the demurrer is sustained.

6. The sixth and seventh demurrers go to so much of paragraphs 9 and 10 of the bill as allege the compromise of certain suits and the

establishment by such compromise of certain rules and regulations contained in circular 766 of the railroad commission.

Conceding the truth of the allegations, the railroad commission would not be estopped thereby from prescribing future reasonable and just rates; nor do the allegations show that the plaintiff acquiesced in the rates prescribed by circular 766. To the extent, therefore, that the plaintiff relies upon the allegations as an estoppel, the demurrer will be sustained. The allegations, however, may remain as part of the bill, as they may become important in considering other questions, particularly the supreme issue submitted, to wit, the reasonableness of the rates prescribed by the commission.

7. The eighth demurrer objects to so much of paragraphs 10 and 19 of the bill as complain of certain circulars, orders, rates, schedules, and tariffs issued by the railroad commission and described in Exhibit E.

The ground of this objection is that the plaintiff has, by its long-continued acquiescence in and observance of the regulations, confirmed their reasonableness and agreed to their enforcement. This demurrer is overruled, because the allegations of the bill show that the plaintiff has persistently and continuously protested against the rates referred to.

8. The ninth demurrer challenges the right of the plaintiff, as claimed in paragraph 10 of the bill, to earn an amount sufficient to provide a sinking fund for the discharge of its indebtedness, in addition to paying the interest thereon.

This claim of the plaintiff was doubtless based upon the decison of the Supreme Court of Pennsylvania. See Brymer v. Butler Water Co., 179 Pa. 251, 36 Atl. 249, 36 L. R. A. 260. With due respect for the opinion of that high tribunal, this court is unable to concur in the view expressed by it, and therefore sustains the demurrer.

9. The tenth, eleventh, twelfth, and fourteenth demurrers go to paragraphs 10, 11, and 13 of the bill. Generally speaking, these paragraphs claim the right, on the part of the plaintiff, to earn a dividend of 6 per cent. on its capital stock, and to an allowance out of its earnings, in addition to operating expenses, fixed charges, and dividends, for the betterment and improvement of its lines of railway and railway properties. The allegations of the bill further complain of the manner in which the railroad commission proceeded in prescribing the rates contained in Exhibit E, etc.

What was said by the court in the fourth clause of its conclusions applies to the grounds of demurrer under consideration. Besides, the court may more intelligently consider the elements which should properly enter into the question of rate making when all the facts are before it. The tenth, eleventh, twelfth, and fourteenth demurrers will therefore be formally overruled.

10. The thirteenth demurrer objects to the allegations of paragraph 12 of the bill which set forth that the evidence produced by the plaintiff before the railroad commission indicated that the tariffs and rates prescribed by the commission were unjust and confiscatory.

The allegations complained of are pertinent at least in showing that

the plaintiff never acquiesced in the rates fixed but constantly protested against them. The demurrer is not well taken and will be overruled.

11. It is objected by the fifteenth demurrer that those allegations of paragraph 13 of the bill are improper, which show that the plaintiff is conducting at great loss within the state of Texas its domestic, as distinguished from its interstate, business, etc.

As before intimated, all these and kindred matters may be more justly and intelligently considered in view of the proof upon the final hearing of the cause. The demurrer will be overruled.

12. The sixteenth and seventeenth demurrers are interposed to certain allegations of the fourteenth paragraph of the bill. In this paragraph the plaintiff assails the validity of passenger circular No. 4, which limits the plaintiff to a passenger rate of 2½ cents per mile, while, it is alleged, all other railway companies in the state may charge 3 cents per mile for the transportation of passengers. The special demurrers now under consideration object to other allegations of the bill, showing that the order was not properly adopted by the railroad commission because of the disqualification of Mr. Colquitt, one of its members, who, it is alleged, had formed and expressed opinions prior to the adoption of the order.

These demurrers raise other questions, of a somewhat similar nature, not necessary at the present time to be considered, since the demurrers were not pressed upon the argument; the counsel for the defendants preferring to answer the bill in these particulars, in order that the law may be applied to the proofs as shown upon the final hearing. The demurrers will therefore be formally overruled.

13. The eighteenth, twentieth, and twenty-second demurrers go also to certain allegations of paragraph 14 of the bill, and these demurrers will be considered together. Briefly stated, it is insisted by the plaintiff, in this paragraph, that the passenger rate of 2½ cents per mile prescribed by passenger circular No. 4 is (1) unreasonable and confiscatory; (2) that it is unjust and discriminatory; and (3) it is alleged that the railroad commission is without authority to establish passenger rates, because the Legislature has established for all roads in the state a passenger rate of 3 cents per mile.

Upon the points suggested the following conclusions are announced.

(1) The Legislature of Texas having expressly authorized the railroad commission to make and establish passenger rates, the commission has the power, with just regard for the constitutional rights of carriers, to fix such rates, provided they do not exceed the maximum allowed by the Legislature of 3 cents per mile.

(2) The commission, within the limits prescribed by the Constitution, may fix different passenger rates for different carriers. Covington, etc., Turnpike Co. v. Sandford, 164 U. S. 598, 17 Sup. Ct. 198, 41 L. Ed. 560; Dow v. Beidelman, 125 U. S. 691, 692, 8 Sup. Ct. 1028, 31 L. Ed. 841; Chicago, etc., R. R. v. Iowa, 94 U. S. 155, 24 L. Ed. 94.

(3) Any order of the commission which prescribes an unreasonably low and confiscatory passenger rate of one carrier, while other carriers, similarly situated, are permitted to charge a higher rate, denies to the former the equal protection of the laws as guarantied by the fourteenth amendment of the Constitution. Cotting v. Kansas City Stockyards

Company, 183 U. S. 79 et seq., 22 Sup. Ct. 30, 46 L. Ed. 92. The allegations of the bill, admitted by the demurrer to be true, bring this case within the principle announced in the last proposition, and it necessarily follows that the plaintiff is denied, by passenger circular No. 4, considered in connection with the allegations of the bill, the equal protection of the laws. The ultimate determination of this interesting and important question must depend upon the proof. The demurrers will be overruled.

14. The nineteenth demurrer objects to the allegations of paragraph 14 of the bill which set forth the construction of the Trinity & Brazos Valley Railroad and declare the effect upon the plaintiff's business alleged to result therefrom.

The court is of the opinion that this demurrer is well taken, and it will therefore be sustained. See Covington, etc., Turnpike Co. v. Sandford, supra.

15. The twenty-first demurrer is interposed to that part of paragraph 14 of the bill alleging in substance that the enforcement against the plaintiff of the rate prescribed by passenger circular No. 4 would result in reduction of rates on other lines of railways at competitive points, and that such reduction would work a discrimination between different localities.

It is thought that this demurrer is well taken, and it will be sustained.

16. The twenty-third demurrer objects to those allegations of paragraph 15 of the bill which set forth the effect of the rules and orders of the railroad commission upon the plaintiff's interstate and foreign traffic.

For reasons already given, this demurrer is overruled.

17. The twenty-fourth demurrer objects to that portion of paragraph 16 of the bill alleging the existence of a contract between the plaintiff and the state of Texas which precludes the state and the railroad commission from prescribing rates the effect of which would reduce the plaintiff's earnings, in contravention of the act of the Legislature of 1853.

The section of the act relied upon by the plaintiff is in the following words:

"It shall be lawful for the Legislature at any time to prescribe the rates to be charged for the transportation of persons and property upon any such road, should they be deemed too high, and may exercise the same power every ten years; provided, that no reduction shall be made unless the net profit of the company for the previous ten years, the expenditures of the company being bona fide, and not with a view to defeat the operation of this section, shall amount to a sum equal to 12 per centum per annum upon its capital stock, and then so as not to reduce the future probable profits below said per centum."

Upon the subject of exemption from future legislation, as claimed by the plaintiff and other railroad companies filing bills, the following language was used by the Supreme Court of the United States, in the case of Chicago, etc., Railway Co. v. Minnesota, 134 U. S. 455, 10 Sup. Ct. 466, 33 L. Ed. 970:

"It was held by this court in Pennsylvania Railroad Co. v. Miller, 132 U. S. 75, 10 Sup. Ct. 34, 33 L. Ed. 267, in accordance with a long course of decisions both in the state courts and in this court, that a railroad corporation takes its charter, containing a kindred provision with that in question, subject

to the general law of the state and to such changes as may be made in such general law, and subject to future constitutional provisions and future general legislation, in the absence of any prior contract with it exempting it from liability to such future general legislation in respect of the subject-matter involved; and that exemption from future general legislation, either by a constitutional provision or by an act of the Legislature, cannot be admitted to exist unless it is given expressly, or unless it follows by an implication equally clear with express words."

See, also, L. & N. R. R. Co. v. Kentucky, 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298; San Antonio Traction Company v. Altgelt, 200 U. S. 304, 26 Sup. Ct. 261, 50 L. Ed. 491.

It may be said, in reference to all the companies which seek to enjoin the rates of the commission, that no one of them relies upon a charter which either expressly or by implication exempts it from liability to future legislation as to the prescription of rates, and certainly the general laws of the state contain nothing which may be so construed. Hence all the companies, whether chartered by special act of the Legislature or under the general laws of the state, took their charters subject to the general law and to such changes as might be made in the general law, and subject to future constitutional provisions and future general legislation. It is unnecessary to consider the case of each plaintiff separately in reference to this question. It is deemed sufficient to observe that the claim of all of them, upon this point, is untenable. The demurrer will therefore be sustained.

18. The twenty-fifth demurrer goes to paragraph 17 of the bill. This paragraph assails, as unconstitutional, sections 5, 6, and 7 of the act creating the railroad commission.

Let it be conceded, though not decided, that the sections complained of are invalid. Still the hand of the commission should not be stayed on that account, since the act generally, which is constitutional, invests it with large powers in the matter of fixing and establishing rates. However, all these questions may be considered upon the final hearing, and the demurrer is formally overruled.

19. The twenty-sixth demurrer objects to that portion of paragraph 18 of the bill alleging that the penalties imposed by the railroad commission act are excessive and confiscatory, thereby rendering the act unconstitutional.

For the reasons assigned in the eighteenth clause of the court's conclusions, the demurrer will be overruled.

20. The twenty-seventh demurrer objects to that part of the bill which seeks to enjoin the railroad commission from ever hereafter making rates, or issuing or delivering any further tariffs, orders, or circulars, affecting the plaintiff.

For obvious reasons, not necessary to be enumerated, the demurrer is sustained. Reagan v. Farmers' Loan & Trust Company, supra.

In addition to the above the following rulings are made:

First. In the suit of the Texas & Pacific Railway Company, and perhaps in others, the defendants demur to so much of the bill as complains of reductions in the rates and charges of express companies. The demurrer is well taken, and is sustained.

Second. In all suits the rates and tariffs sought to be enjoined should be set out clearly and specifically, without confusing them with

prior rates, abandoned by the commission, or previous orders, set aside and annulled.

Third. Motions have been filed in several of the cases in the nature of exceptions. Disregarding these motions, the court has permitted, wherever necessary, the demurrers to stand as exceptions, and has endeavored to include in its rulings on the demurrers all questions that may have been raised in either mode.

Fourth. Leave is granted the plaintiffs in all suits to amend their bills.