## PENNSYLVANIA RAILROAD COMPANY *v.* MILLER.

ERROR TO THE COURT OF COMMON PLEAS, NO. 2, FOR THE COUNTY OF PHILADELPHIA, STATE OF PENNSYLVANIA.

No. 36.   Argued October 24, 25, 1889. — Decided November 11, 1889.

Neither the charter of the Pennsylvania Railroad Company, contained in an act of the legislature of Pennsylvania, passed April 13, 1846, (Laws of 1846, No. 262, p. 312,) nor the acts supplementary thereto, nor the act of that legislature, passed May 16, 1857, (Laws of 1857, No. 579, p. 519,) constituted such a contract between the State and the company as exempted the latter from the operation of § 8 of Article XVI of the constitution of Pennsylvania of 1873, requiring that corporations invested with the privilege of taking private property for public use should make compensation for property injured or destroyed by the construction or enlargement of their works, highways or improvements; nor did such constitutional provision, as applied to the company, in respect to cases afterwards arising, impair the obligation of any contract between it and the State.

The company took its original charter subject to the general law of the State, and to such changes as might be made in such general law, and subject to future constitutional provisions and future general legislation, since there was no prior contract with it exempting it from liability to such future general legislation, in respect of the subject matter involved.

Exemption from future general legislation, either by a constitutional pro-
vision or by an act of the legislature, cannot be admitted to exist, unless
it is expressly given, or unless it follows by an implication equally clear
with express words.

THE case is stated in the opinion of the court.

*Mr. Wayne Mc Veagh* for plaintiff in error. *Mr. A. H. Wintersteen* was with him on the brief.

*Mr. David T. Watson* and *Mr. M. Hampton Todd* for defendant in error. *Mr. George W. Biddle* was with them on the brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action on the case, brought in June, 1881, by George R. Duncan against the Pennsylvania Railroad Company, a Pennsylvania corporation, in the Court of Common Pleas No. 2, for the county of Philadelphia, Pennsylvania. The plaintiff sued as the owner in fee of a piece of land, with the buildings, wharves and improvements thereon, situated at the northwest corner of Twenty-third Street and Filbert Street, in the city of Philadelphia, and extending 230 feet and 11 inches along the west side of Twenty-third Street, and 426 feet from that corner along the north side of Filbert Street, to low-water mark on the Schuylkill River.

The declaration alleged that the defendant had constructed along and upon Filbert Street, and in front of the premises of the plaintiff, an elevated railroad, placed on iron and stone pillars set at the curb-lines in Filbert Street, at intervals longitudinally of 50 feet, more or less, and at an elevation of at least 20 feet above the established grade of Filbert Street, and had constructed an abutment for the sustaining of a bridge superstructure across the Schuylkill River, on the eastern side of said river and in the middle of Filbert Street, in front of the premises of the plaintiff, and had constructed, opposite Filbert Street, in the channel of the river, two piers to further support the bridge superstructure, the bridge and the elevated railroad making a continuous line of railway, operated by the

defendant, to transport freight and passengers in cars drawn by steam locomotives; that Twenty-third Street and Filbert Street, at the place in question, were public highways of the city of Philadelphia; that the construction by the defendant of the elevated railroad, and of the abutment and pier for the support of the bridge superstructure, and the operation and use of the elevated railroad to transport freight and passengers in cars drawn by steam locomotives, and the noise, burning cinders, smoke, dust and dirt, incident to the use or such railroad, had injured the plaintiff in the enjoyment of his premises, and had rendered the same incommodious, and of little or no value to him, and had deprived him of the free use of Filbert Street as a highway, and of free access to and from the wharves on the river front of his property, by the river as well as by Filbert Street, and had greatly depreciated the value of the wharves; and that the injuries were committed on the 1st of June, 1881, and at all times since.

The elevated railroad in question was built by the defendant in 1880 and 1881, and was opened for freight in April, 1881, and for passengers in December, 1881. It is known as the Filbert Street extension, and crosses the Schuylkill River a short distance above Market Street, and ends at Broad Street. From Twenty-first Street west to the river the tracks were laid upon a structure of wooden and iron beams directly over the cartway of the street, and were sustained by iron pillars some 18 inches square, resting upon the footway inside of the curb-line. This was the case along the whole length of the south side of the plaintiff's property, the structure being some 40 feet high, and the railing or guard along the track coming within one or two feet of the wall of the plaintiff's building. None of the plaintiff's property was actually taken by the defendant, but the action was brought for the consequential damages caused by the construction of the railroad and its use and operation.

The defendant set up, among other defences, that it had the right to do what it had done, without liability to the plaintiff, by virtue of its charter, contained in an act passed by the legislature of Pennsylvania, April 13, 1846, (Laws of 1846, No. 262,

p. 312,) and by virtue of a further act of that legislature, passed May 16, 1857 (Laws of 1857, No. 579, p. 519).

The case was tried before the court and a jury, and resulted in a verdict for the plaintiff, for $20,000, for which amount, with costs, he had judgment. On a writ of error, the judgment was affirmed by the Supreme Court of Pennsylvania, *Pennsylvania Railroad Co.* v. *Duncan,* 111 Penn. St. 352, and the defendant has brought the case to this court by a writ of error to the court of first instance, to which the record had been remitted. Duncan having died, his administrator has been substituted as defendant in error.

The Federal question involved is whether the acts of 1846 and 1857 constituted a contract between the State and the defendant, relieving the defendant from liability in this suit, and whether such contract was of such a character that its obligation could not be impaired by subsequent legislation by the State.

It is first necessary to see what are the provisions of the statutes on which the defendant relies.

The 11th section of the act of 1846 gave authority to the defendant to construct a railroad from Harrisburg to Pittsburg, with a branch to Erie, and gave to it the right to enter upon and occupy all land necessary for the purpose, and to "take" the necessary materials from any land adjoining or in the neighborhood of the railroad so to be constructed, " *Provided,* That such compensation shall be made, secured, or tendered to the owner or owners of any such lands or materials as shall be agreed upon between the parties, or in such manner as is hereafter mentioned : *Provided further,* That the timber used in the construction or repair of said railroad shall be obtained from the owners thereof only by agreement or purchase." The 12th section provided for the fixing of such compensation, when not agreed upon, through a petition to the court of quarter sessions of the proper county. The 17th section contained this provision : "And it shall be lawful for the said company, in the manner and subject to the conditions and provisions hereinbefore provided, in relation to the main line of their railroad by this act authorized to be made, to make such

lateral railroads or branches, leading from the main line of their said railroad, to such convenient place or points, in either of the counties into or through which the said main line of their road may pass, as the president and directors may deem advantageous, and suited to promote the convenience of the inhabitants thereof, and the interests of said company."

By the 4th section of the act of March 27, 1848, (Laws of 1848, No. 224, p. 274,) passed as a supplement to the act of 1846, provision was made for ascertaining, through the action of the court of common pleas of the proper county, the damages sustained by the owner of land or materials " taken " by the defendant, in case such compensation could not be agreed upon.   Section 5 of that act provided as follows: " That if said railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road: *Provided,* That the damages incurred in changing the location of any road authorized by this section shall be ascertained and paid by said company in the same manner as is provided for in regard to the location and construction of their own road."

By § 1 of an act passed April 12, 1851, (Laws of 1851, No. 297, p. 518,) it was provided that the 5th section of the act of 1848, should be so construed as to include the streets, lanes and alleys in any town, borough, or city through which the road passed.

By the act of May 16, 1857, before referred to, provision was made for the sale at public auction of the whole main line of the public works of the State of Pennsylvania, which included the Philadelphia and Columbia Railroad.   The act provided, among other things, (§ 3,) that it should be lawful for any railroad company then incorporated by the State to purchase such main line for a sum not less than $7,500,000; and that if the Pennsylvania Railroad Company should become the purchaser at such public sale or by assignment, (which assignment the act provided for,) it should pay in addition to the purchase-money of not less than $7,500,000

the further sum of $1,500,000, and should, in consideration thereof, have forever certain exemptions from taxation. This provision in regard to taxation was held unconstitutional by the Supreme Court of Pennsylvania in *Mott* v. *Pennsylvania Railroad Co.*, 30 Penn. St. 9, a decision made before the sale took place. The 3d section of the act further provided that it should be lawful for the purchaser " to straighten and improve the said Philadelphia and Columbia Railroad, and to extend the same to the Delaware River, in the city of Philadelphia." The 11th section of the act provided as follows: " That should any company already incorporated by this Commonwealth become the purchaser of said main line, they shall possess, hold and use the same under the provisions of their act of incorporation and any supplements thereto, modified, however, so as to embrace all the privileges, restrictions and conditions granted by this act in addition thereto; and all provisions in said original act and any supplements inconsistent with the privileges herein granted shall be and the same are hereby repealed."

At a meeting of the stockholders of the defendant, held on the 20th of July, 1857, for the purpose of accepting or rejecting the provisions of the act of 1857, and of considering such action as the directors of the defendant had taken in pursuance of that act, subject to the approval of the stockholders, it was resolved, that the stockholders of the defendant accepted the provisions of the act, so far as the same in any way related to or affected the defendant, and ratified and approved of such action as had been taken by the board of directors of the defendant, in purchasing the said main line of the public works, pursuant to the provisions of that act, for the sum of $7,500,000. The sale at public auction had taken place on the 25th of June, 1857, and the property had been purchased by the defendant for the sum above mentioned. On the 31st of July, 1857, the State conveyed by deed poll to the defendant the property so purchased, described as in the margin.[1]

---

[1] " The whole main line of the public works between the said cities of Philadelphia and Pittsburg, in the State of Pennsylvania, consisting of the

By the constitution of Pennsylvania of 1873, which took effect January 1, 1874, it was provided as follows, by § 8 of Article XVI: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed, by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction."

With these premises, we are prepared to consider the views taken of this case by the Supreme Court of Pennsylvania. That court gave its assent to the principle that the charter of the defendant was inviolable. It further stated that the framers of the constitution of 1873 did not intend to repeal any of the provisions of that charter. It held that § 8 of Article XVI of that constitution included not only then exist-

Philadelphia and Columbia Railroad, the Allegheny Portage Railroad, including the new road to avoid the inclined planes, with the necessary and convenient width for the proper use of said railroads, the Eastern Division of the Pennsylvania canal, from Columbia to the junction, the Juniata Division of the Pennsylvania canal, from the junction to the eastern terminus of the Allegheny Portage Railroad, and the Western Division of the Pennsylvania canal, from the western terminus of the Allegheny Portage Railroad to Pittsburg, and including also the right, title and interest of the Commonwealth in the bridge over the Susquehanna, at Duncan's Island, together with the same interest in the surplus water power of said canals, with the right to purchase and hold such lands as may be necessary to make the same available; and all the reservoirs, machinery, locomotives, cars, trucks, stationary engines, workshops, tools, water-stations, toll-houses, offices, stock and materials whatsoever and wheresoever thereunto belonging or held for the use of the same, and together with all the right, title, interest, claim, and demands of the Commonwealth of Pennsylvania to all property — real, personal and mixed — belonging unto or used in connection with the same by the said Commonwealth, and together with all and singular other the buildings, improvements, powers, authorities, ways, means and remedies, estates and interests, rights, members, incidents, liberties, privileges, easements, franchises, emoluments, reversions, remainders, rents, issues, profits, hereditaments, and appurtenances of what name, nature, or kind soever thereto belonging or in anywise appertaining, which by force and virtue of the said recited act of assembly and the provisions thereof were meant and intended and of right ought to be hereby assigned and transferred therewith."

ing municipal corporations, but also then existing "other corporations." It further held, that the defendant did not derive its authority to build the branch road in question, from the western side of the Schuylkill River, through Filbert Street, from the act of 1846, because that act embraced only the power to build and operate a road from Harrisburg to Pittsburg ; but that it derived such authority from the act of May, 1857, in the 11th section thereof, before quoted ; and that the convention which made the constitution of 1873 had the power to subject the defendant's exercise of the right of eminent domain to the provision that it should make just compensation, not only for the property which it might choose to "take," in the strict sense of that word, but also for such as it might injure or destroy.

We think these views are sound.. There was no such contract between the State and the defendant, prior to the constitution of 1873, as prevented the subjection of the defendant by that constitution to the liability for consequential damages arising from its construction of this elevated road in 1880 and 1881. Prior to the constitution of 1873, and under the constitutional provisions existing in Pennsylvania before that time, the Supreme Court of that State had uniformly held that a corporation with such provisions in its charter as those contained in the charter of the defendant, was liable, in exercising the right of eminent domain, to compensate only for property actually taken, and not for a depreciation of adjacent property. The 8th section of Article XVI of the constitution of 1873 was adopted in view of those decisions, and for the purpose of remedying the injury to individual citizens caused by the non-liability of corporations for such consequential damages. Although it may have been the law in respect to the defendant, prior to the constitution of 1873, that under its charter and the statutes in regard to it, it was not liable for such consequential damages, yet there was no contract in that charter, or in any statute in regard to the defendant, prior to the constitution of 1873, that it should always be exempt from such liability, or that the State, by a new constitutional provision, or the legislature, should not have power to impose such liability upon it,

in cases which should arise after the exercise of such power. But the defendant took its original charter subject to the general law of the State, and to such changes as might be made in such general law, and subject to future constitutional provisions or future general legislation, since there was no prior contract with the defendant, exempting it from liability to such future general legislation, in respect of the subject matter involved.

This principle is well set forth in the opinion of the justices of the Supreme Judicial Court of Massachusetts, given by them in answer to a question submitted to them by the senate of that Commonwealth, in *In re Provident Institution for Savings,* 9 Cush. 604. See, also, *Nelson* v. *Vermont & Canada Railroad Co.,* 26 Vermont, 717; *Thorpe* v. *Rutland & Burlington Railroad,* 27 Vermont, 140; *Branin* v. *Connecticut & Passumpsic Railroad,* 31 Vermont, 214; *Frankford Railway* v. *The City,* 58 Penn. St. 119; *Baltimore & Susquehanna Railroad* v. *Nesbit,* 10 How. 395, 399, 400; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166; *Railroad Co.* v. *Hecht,* 95 U. S. 168, 170; *Beer Co.* v. *Massachusetts,* 97 U. S. 25, 32, 33; *Newton* v. *Commissioners,* 100 U. S. 548, 557; *Missouri Pacific Railway* v. *Humes,* 115 U. S. 512; 1 Hare's American Const. Law, 609, 610; 2 Morawetz on Private Corporations, 2d ed. §§ 1062, 1065, 1067; Cooley's Const. Limit., 4th ed. * 574, 716.

The provision contained in the constitution of 1873 was merely a restraint upon the future exercise by the defendant of the right of eminent domain imparted to it by the State. By its terms, it imposes a restraint only upon corporations and individuals invested with the privilege of taking private property for public use, and extends the right to compensation, previously existing, for property taken, to compensation for property injured or destroyed by the construction or enlargement of works, highways or improvements, made or constructed by such corporations or individuals. Such provision is eminently just, and is intended for the protection of the citizen, the value of whose property may be as effectually destroyed as if it were in fact taken and occupied. The imposition of such a liability is of the same purport as the imposition of a liability

for damages for injuries causing death, which result from neg-
ligence, upon corporations which had not been previously sub-
jected by their charters to such liability. *Boston, Concord &c.
Railroad* v. *The State*, 32 New Hampshire, 215 ; *South Wes-
tern Railroad* v. *Paulk*, 24 Georgia, 356 ; *Duncan* v. *Pennsyl-
vania Railroad*, 94 Penn. St. 435 ; *Georgia Railroad &
Banking Co.* v. *Smith*, 128 U. S. 174 ; Cooley's Const. Limit.,
4th ed. * 581, 724 ; 1 Hare's American Const. Law, 421.

Nor will the exemption claimed from future general legisla-
tion, either by a constitutional provision or by an act of the
legislature, be admitted to exist, unless it is expressly given, or
unless it follows by an implication equally clear with express
words.   In the present case, the statutory provisions existing
prior to the constitution of 1873, in favor of the defendant,
cannot be properly interpreted so as to hold that the State
parted with its prerogative of imposing the liability in question,
in regard to future transactions. *Providence Bank* v. *Billings*,
4 Pet. 514 ; *Charles River Bridge* v. *Warren Bridge*, 11 Pet.
420 ; *Christ Church* v. *Philadelphia*, 24 How. 300 ; *Gilman* v.
*City of Sheboygan*, 2 Black, 510 ; *Tucker* v. *Ferguson*, 22 Wall.
527 ; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659 ; *Newton* v.
*Commissioners*, 100 U. S. 548, 561 ; 2 Hare's American Const.
Law, 661, 663, 664.

*Judgment affirmed.*