No. 34,396

M. S. LOOMIS, LAWRENCE L. WILSON, CATHERINE CARTER and IRA T. FOSTER (IRA M. FOSTER, substituted), *Appellees*, v. THE CITY OF AUGUSTA, *Appellant*.

(99 P. 2d 988)

Opinion filed March 9, 1940.

*K. M. Geddes*, of El Dorado, and *R. A. Cox*, of Augusta, for the appellant.

*George Austin Brown, Robert C. Foulston, George Siefkin, John F. Eberhardt*, all of Wichita, and *J. B. McKay*, of El Dorado, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This appeal is from certain orders and rulings in a condemnation proceeding.

A large part of the city of Augusta is located upon the east half

of sections 22 and 27 so that the west boundary line of the city is substantially the same as the north and south center lines of these two sections. A highway runs north and south on the west lines of these sections. The levee or dike hereinafter mentioned runs north and south a few feet east of this highway. It extends around the south and east sides of the city.

The Whitewater river is west of the road and levee. The river flows in a southerly direction and by reason of its meanderings its distance from the levee varies from 500 feet to more than a half mile..

As authorized by the floodwater statutes (G. S. 1935, 12-635 and cognate sections) the city passed appropriate resolutions and proceeded to condemn the necessary land and to construct a levee for protection against floodwaters.

No question seems to be raised as to the regularity. of the proceedings. Appraisers were appointed who made and filed their report with the city clerk, and notice of hearing on the report was given as provided by the statute.

In due time the claimants herein filed their exceptions to the report of the appraisers. Upon a hearing had before the governing body of the city, the report of the appraisers was approved and the claims and demands of these claimants for damages were denied. An appeal was duly perfected to the district court.

The city filed a demurrer to the exceptions or petitions of the claimants. The court was requested to make conclusions of law in advance of the trial. The court filed findings as to the facts and conclusions of law. The demurrer of the city was overruled. This appeal followed.

The court found that the land owned by some of the claimants lies on the east side of the river, between the river and the levee, and that some of the land of the claimants lies on the west side of the river.

No part of the land of any of the claimants was taken or appropriated by the city.

The claimant Loomis in his exceptions to the report of the appraisers alleged that he was the owner of some 300 acres of fertile land lying west of the city of Augusta of the reasonable value of $42,000, exclusive of oil or mineral rights; that his land is so situated that in times of flood and high water the natural drainage is to the east and south away from his land; that the levee will change

the natural flowage of the water and precipitate the same on his land to his damage. That his land is not only valuable for agricultural purposes but has potential value for suburban acreage and residential purposes; that the proposed dike will depreciate and destroy the fair and reasonable market value of his lands and the usability thereof "for the several purposes to which they are adapted, intended, now being used, and prospectively usable." That by reason of the facts stated, "the lands of this claimant will suffer damages and be depreciated to the extent" of $18,000 by the proposed levee and dike.

Claimant alleges that unless the statute under which the dike and levee are being constructed provides for compensating claimant for such damages, the statute is unconstitutional and void; that it violates sections 1 and 18 of the bill of rights, and also section 4, article 12 of the constitution of the state of Kansas; also the 14th amendment to the constitution of the United States.

The objections of the other claimants contained similar allegations.

The court found that the survey made by the engineer appointed by the city and the profile and maps prepared and filed by such engineer, made no mention of any of the land of the claimants. It stands admitted that there was no actual appropriation of any part of the land of any of the claimants.

The statute under which the land was condemned by the city, G. S. 1935, 12-639, provides:

"That the governing body shall appoint three disinterested householders of the said city to assess all damage to any and all property that will be injured or damaged by reason of said improvement. . . . . Said appraisers, . . . shall personally view, inspect and examine all lots and pieces of ground . . . and all other property liable to be injured or damaged by reason of said improvements being made."

While this statute is broader in its terms than the general condemnation statutes applicable to cities (26-201 to 26-210), we do not think it can be construed to apply to prospective invasions and injuries which are purely speculative in character.

We are not dealing with a situation where part of a larger tract is taken. In such case the part taken may be a vital and integral part of the whole, and its taking may diminish the usability of the entire tract. In such case the owner is entitled to the diminution in value of the entire tract caused by the taking. (McCormick, Damages, Hornbook Series, § 130.)

It is true the claimants allege their land is potentially available for urban acreage and residential purposes. If such property were located near the city, it might be that the land would have a special value to the owner which would not be reflected in its ordinary market value. But here the land of claimants that might be so used is more than one-half mile from Augusta—a small city—and its possibilities in that regard would appear to be remote and speculative.

The trial court found that the property of certain of the claimants lies west of the river, and as to all of the property the allegation is that the surface and floodwaters will be diverted from the natural course onto claimants' land. It is not alleged claimants have been deprived in any way of the ordinary, necessary and beneficial use of their property or that any surface or floodwaters have flooded their lands. The purpose is not to secure compensation for actual damage sustained, but to recover for anticipated or probable future injuries or detriment.

The question of the right to demand compensation for prospective injuries to land was considered by this court in *United Power and Light Corp. v. Murphy,* 135 Kan. 100, 9 P. 2d 658. In that case there was a proceeding to condemn a right of way for an electric transmission line across farm land. The court said:

"The court had permitted to go to the jury, with a comment which clearly indicated it deemed the evidence proper, testimony of supposed damages which might result in the future if defendant's employees should break down fences or leave gates open, over which stock would stray or receive injury; or that in the future crops on the strip of land might be injured or damaged by defendant's employees going in there to inspect or maintain the line; or that the land itself might be damaged by reason of cuts made by trucks from which ruts might form, or other damages result. These are not proper elements to be taken into consideration." (p. 107.)

The court, in holding it was error to admit this evidence, quoted from 20 C. J. 778, in which it is stated:

"'In proceedings to condemn land, . . . no damages are included except such as necessarily arise from a lawful taking and a proper construction and operation of the improvement. Anticipated or past negligence in the construction of the improvement is not, therefore, an element of damage. . . .'" (p. 107.)

See *Yagel v. Kansas Gas & Electric Co.,* 131 Kan. 267, 291 Pac. 768.

Where there is no actual appropriation of any property the owner is not entitled to claim damages for merely incidental, indirect and

consequential injuries which his property may sustain by reason of a public work or construction, where the same is justified by a lawful exercise of the powers of government. (Black, Constitutional Law, Hornbook Series, 4th ed., § 190.) Thus, in *Mayfield v. Board of Education,* 118 Kan. 138, 233 Pac. 1024, where property was condemned for the purpose of erecting a grade-school building, it was determined that adjoining property owners whose land was not appropriated could not enjoin the condemnation proceedings until they were paid consequential damages resulting therefrom.

Under the statute the claimants were not denied any constitutional rights. (*Bragg v. Weaver,* 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135.)

We think it should be stated that these proceedings on behalf of the appellees will not estop them from bringing a subsequent action for damages for any injuries they may sustain in the future, should they have a just cause of action. In *McKim v. Carre,* 72 Kan. 461, 83 Pac. 1105, a party instituted proceedings under a void statute to establish a private road across certain land. In holding that such proceedings did not preclude him from afterward asserting prescriptive rights to the roadway, the court said:

". . . In order for a party to be concluded by an election between two inconsistent remedies both must in fact be open to him. The pursuit of a remedy which he supposes he possesses, but which in fact has no existence, is not an election between remedies but a mistake as to what remedy he has, and will not prevent his subsequent recourse to whatever remedial right was originally available."

See, also, 20 C. J. 21.

For the reasons stated, we think the demurrer by the city to the objections or petitions of the claimants should have been sustained.

Judgment reversed.

WEDELL, J., specially concurs.

HOCH, J. (dissenting): I cannot concur fully in the majority opinion. The time presently available makes it impossible, however, to do more than state briefly my views on some of the issues involved.

Both in the syllabus and in the body of the opinion the fact is stressed that the land of the claimants has not been actually taken or appropriated by the city. The matter is treated largely as though we were dealing with an ordinary condemnation statute or proceeding, but that is not the situation, and the authorities quoted relative to ordinary condemnation proceedings are not in point. The statute

under which the levee was constructed by the city as part of a flood-protection project (G. S. 1935, 12-635 to 12-646) is much broader than the ordinary condemnation statute. It specifically provides in section 12-639 that the appraisers shall "assess all damages to any and all property that will be injured or damaged by reason of said improvement." Certainly such language does not limit the assessment of damages to property that is actually appropriated.

The majority opinion seems also to proceed largely upon the theory that the prospective injury of which complaint is made is "incidental" and "indirect." I see nothing "incidental" or "indirect" about the injury which claimants allege will result to their land. The allegations are that the very purpose of the levee is to hold back floodwaters which will flood claimants' land and that the damage to their land will be the direct result. If such flooding of claimants' land will inevitably result, as alleged, by construction of the levee, the damage will certainly not be incidental or indirect. Accordingly, I do not think the cases cited in the majority opinion on this point are applicable.

Statements made in the opinion seem to overlook the fact that the case is here on appeal from an order overruling the demurrer to the objections submitted by the claimants. Being here on demurrer, the allegations must be taken as true. It is not only alleged that the land of the claimants will be overflowed and damaged as a direct result of the erection of the levee, but that the report of the engineers employed by the city in connection with this project states that claimants' land will be so injured. I am not here discussing the question of measure of damages or damages that may be highly speculative, but the right of claimants to be heard on their definite allegations of injury and damages directly resulting from the construction of the levee. The majority opinion comments on the allegations of claimants that their land lies close to the city limits and has potential value for future development, the comment being to the effect that there is little probability of such development in the near future. But claimants also allege that their land is fertile farm land which will be inundated. Moreover, as already stated, the question is here on demurrer, and questions of fact as to land values or damages are not here presented for our determination.

I think the trial court was in error in holding that claimants were entitled to separate trials by jury. When they proceeded under

the statute they were bound by the provisions of the statute. The statute (§ 12-643) provides that "all objections that shall be filed shall be heard and determined by said court as one proceeding."

I concur in the last two paragraphs of the majority opinion. If claimants are to be barred from proceeding under the statute and present evidence in support of their allegations that their land will be directly damaged as a result of the levee, they certainly must have a right to bring an action to recover damages that may subsequently be suffered from actual overflow from the erection of the levee.