No. 36,915

Ira M. Foster, *Appellee,* v. City of Augusta, *Appellant.*

No. 36,916

Lawrence L. Wilson, *Appellee,* v. City of Augusta, *Appellant.*

No. 36,917

Robert R. Richey, *Appellee,* v. City of Augusta, *Appellant.*

No. 36,918

Catherine Carter, *Appellee,* v. City of Augusta, *Appellant.*

No. 36,919

Glester S. Carter, *Appellee,* v. City of Augusta, *Appellant.*

No. 36,920

L. W. Loomis, *Appellee,* v. City of Augusta, *Appellant.*

No. 36,921

M. S. Loomis, *Appellee,* v. City of Augusta, *Appellant.*

No. 36,922

M. L. Loomis, *Appellee,* v. City of Augusta, *Appellant.*

(199 P. 2d 779)

Opinion filed November 13, 1948.

K. M. Geddes and George L. Benson, both of El Dorado, argued the cause, and R. A. Cox, of Augusta, was with them on the briefs for the appellant.

George Austin Brown, of Wichita, argued the cause, and J. B. McKay, of El Dorado, was with him on the briefs for the appellees in cases Nos. 36,915, 36,916 and 36,917.

George Austin Brown, of Wichita, argued the cause, and J. B. McKay, of El Dorado, and Robert C. Foulston, George Siefkin, George B. Powers, Samuel E. Bartlett, Andrew F. Schoeppel, Carl T. Smith, Stuart R. Carter and Thomas E. Woods, all of Wichita, were with him on the briefs for the appellees in cases Nos. 36,918, 36,919, 36,920, 36,921 and 36,922.

The opinion of the court was delivered by

HARVEY, C. J.: These eight actions were brought by individual owners of property situated in the flood valley of the Whitewater river against the city of Augusta, a city of the second class, with a population of about 4,000, to recover damages alleged to have resulted to their property by the city building and maintaining a levee to protect the city and its inhabitants from floods. The attached plat, Appendix "A," shows the location of the city, the levee and the property of the respective plaintiffs alleged to have been damaged.

The city of Augusta is situated for the most part in the east half of sections 22 and 27, as shown on the plat, in an area which might be described as within a V formed by the Walnut and Whitewater rivers. The source of the Walnut is some thirty or forty miles to the north and northeast of the city and it flows in a crooked course to the south and southwest, passing to the east and south of the city. The Whitewater river has its source about the same distance to the north and northwest of the city and flows southward in a crooked course to the southeast into the Walnut river, perhaps a half mile south of the city. It passes the city on the west. In times of heavy rains and high waters these rivers overflow their normal banks frequently, at irregular intervals, spreading out over the farm lands of the flood valleys of the rivers, including a substantial part of the city of Augusta.

. Beginning shortly prior to June, 1936, the city of Augusta, proceeding under our statute (G. S. 1935, ch. 12, §§ 635 to 646), constructed a levee on the west, south and east sides of the city to protect the city and its inhabitants, and the public and private property therein, from the floodwaters of those rivers. The levee was about three miles in length, constructed mostly of earth, about fifty feet wide at the bottom, ten feet wide at the top, and in places as much as twelve or fourteen feet high. It began at the northwest corner of the city, extended southwest almost to the west line of the section, thence south, all on section 22 to near the south end of the city, thence around the south end and north to about the south line of section 22. None of the real estate or other property of any of the plaintiffs was acquired or taken possession of by the city.

The sections of the statute under which the city acted, as applicable here, may be summarized as follows (we use only the section numbers): By section 635 any city in or near which there is a nonnavigable natural watercourse, the overflow from which in event of high water is liable to cause injury to public or private property within the city, may acquire, by eminent domain or purchase, within or without the city for a distance of five miles, the lands and easements necessary to construct levees and acquire the necessary outlets and cause all necessary work to be done to protect the city and public and private property therein from floods and damage by the overflow of the natural watercourse. By section 636 the project is initiated by resolution passed by the governing body of the city declaring it necessary, for the public good and convenience, that the property described in the resolution be protected from overflows from the watercourse. It shall have a competent engineer to make the survey, plans and estimate of the cost, and to examine the property liable to be damaged by the overflow of the watercourse, and make a report in duplicate, one of which shall be sent to the public utilities commission. Section 637 requires the public utilities commission to refer the report to their engineer, who shall examine the same, and if necessary make a personal inspection and report his findings to the commission, which shall make a finding, approving or disapproving the report of the engineer, and certify the same to the city. Section 638 pertains to bids and contract for the work, which are not here involved. Section 639 requires the governing body of the city to appoint three disinterested householders of the city "to assess all damages to any and all property

that will be injured or damaged by reason of said improvement," and in fixing the amount of the damages they may take into consideration benefits, if any. By section 640 the governing body of the city, after receiving the report of the appraisers, shall fix a time and place for the hearing of all objections to the report and give notice thereof. Section 641 pertains to the conduct of the hearing and the action of the governing body thereon. Section 642 reads: "That all objections to the report of said appraisers must be in writing and filed with the city clerk of said city forty-eight hours prior to the time fixed for the hearing of the same." Section 643 provides for an appeal by anyone who has filed objections and had a hearing thereon, and feels aggrieved at the decision of the governing body of the city, to the district court by filing a prescribed bond with the city clerk, who shall then make and file a transcript of the hearing with the clerk of the district court. The court then has jurisdiction of the cause and shall hear all competent evidence as to benefits received and damages sustained for the improvement. "All objections that shall be filed shall be heard and determined by said court as one proceeding," and upon the rendition of the judgment the clerk of the court shall certify the decision to the governing body of the city. Section 644 authorizes the governing body to issue internal improvement bonds "to provide for the payment of the costs of said improvements and the damages occasioned by reason thereof, . . ." Section 645 pertains to special benefit assessments, and section 646 to bond limitations, neither of which is pertinent here.

Without stating details it may be said the record discloses the city proceeded in harmony with the statute as above outlined. Appraisers were appointed, as required by section 639, to assess damages by reason of the construction of the improvement. They reported, "That there will result damages in the amount of $250 to Lots 5 and 6, in Block 30, of the Original townsite of the city of Augusta, Kan. That there will not be other damage of a definite and ascertaining nature." The city set a date for hearing and gave notice, as required by section 640, and within the time provided by section 642 four owners of real property filed written objections to the report of the appraisers together with their claims of damages. Ira T. Foster, as the owner of the land shown in the name of Ira M. Foster on the plat, filed his objections, which in short alleged that the construction of the levee would damage his property in the sum

of $14,000. M. S. Loomis filed his objections in which he alleged he was the owner of the land now shown on the plat in his name, and also that shown on the plat in the name of L. W. Loomis, and the east half of the northwest quarter of section 21, now shown on the plat in the name of M. L. Loomis. He alleged the land was of the value of $42,000, exclusive of mineral rights; that it was suitable and desirable for agricultural purposes and had potential value for suburban acreage and residential purposes, and that by the construction of the dike his land would suffer damages and be depreciated to the amount of $18,000. Catherine Carter filed her objections in which she alleged she was the owner of eighty acres shown on the plat in her name; that it was of the reasonable value of $12,000, exclusive of mineral rights, and that it would be damaged in the sum of $10,000 by the construction of the levee. Lawrence L. Wilson filed his objections in which he alleged he was the owner of the eighty acres of land shown in his name on the plat and that it would be damaged in the sum of $10,000 by the construction of the levee. Each of the objectors objected to the report of the appraisers and asked that they be allowed damages in the amounts claimed. The governing body conducted a hearing upon the appraisers' report and the objections thereto, as provided by section 641, and disallowed the claims of the objectors and approved the report of the appraisers. The objectors then appealed to the district court. Thereupon, by a showing deemed by the court to be proper, Ira M. Foster was substituted for Ira T. Foster and the proceedings continued thereafter in his name. The district court was asked to and did determine questions of law in advance of the trial of the appeal upon its merits. The city felt aggrieved by the rulings of law of the trial court and appealed to this court, where the claims of the objectors were heard and determined in one opinion under the title of *Loomis v. City of Augusta,* 151 Kan. 343, 99 P. 2d 988. That appeal was presented to the court as an appeal in an eminent domain proceeding, and the court held:

"In a condemnation proceeding under section 12-639 [G. S. 1935], where it appeared that there had been no actual appropriation of the land of the claimants, and no actual invasion of such land or injuries thereto, the statute construed, and held not to allow recovery for prospective invasions and injuries which are purely speculative in character." (Syl. ¶ 1.)

In the argument there was a discussion as to whether the claimants, by appealing from the appraisement, had elected whatever

remedy they might have at any time with respect to damages from the construction of the levee. Respecting that the court held:

"In order for a party to be concluded by an election between two inconsistent remedies both must in fact be open to him. The pursuit of a remedy which he supposes he possesses, but which in fact has no existence, is not an election between remedies, but a mistake as to what remedy he has, *and will not prevent his subsequent recourse to whatever remedial right was originally available.*" (Emphasis supplied.) (Syl. ¶ 2.)

Nothing further was done in the matter until the above entitled actions were filed in the district court on various dates from May 16 to May 25, 1945.

In each of the cases the petition was framed as a common-law action for damages. The respective plaintiffs alleged the construction of a levee and that on or about the 21st day of April, 1944, and for numerous days thereafter heavy rainstorms occurred in and near the city of Augusta and on the property north, northeast and northwest thereof; that during the rains the overflows from the rivers and floodwaters were unable to escape in their natural course and were thrown upon and impounded upon the lands which plaintiffs owned or operated, to their damage, in sums stated, aggregating approximately $65,000. To the respective petitions defendant filed a lengthy motion to make more definite and certain, to strike, and to separately state and number, and to elect. These were presented to the court and overruled. Defendant then demurred to each petition upon several grounds. These demurrers were overruled and defendant has appealed.

In this court counsel for appellant complain that the trial court did not sustain its motion to make definite and certain, etc., and of the overruling of its demurrer to the respective petitions. They argue, among other things, that in constructing the levee the city was acting in its governmental capacity in complete accord with a valid statute; that plaintiffs' actions are in tort, and that there is no constitutional or statutory provision which makes the city liable for damages in actions such as those brought by plaintiffs.

Counsel for plaintiffs, as appellees here, in answer to the argument of counsel for appellant, contend the actions are not in tort, but are governed by the law of eminent domain; that the flooding of private property by a public improvement amounts to a "taking" within the meaning of the law of eminent domain, and that they are entitled to recover for the loss or injury sustained in a common-

law action for damages. They predicate this doctrine upon *Pumpelly v. Green Bay Company*, 13 Wall. (80 U. S.) 166, 20 L. Ed. 557, and upon *United States v. Lynah*, 188 U. S. 445, 47 L. Ed. 539, 23 S. Ct. 349. We have explored this argument and find it not to be well taken. Each of the cases relied upon so heavily has been so nearly overruled or limited in its application as to be ineffective for the purpose counsel seek to use it. (*Transportation Co. v. Chicago*, 99 U. S. 635, 25 L. Ed. 336.) More than that, the Lynah case grew out of a federal statute and was decided under federal law. In exercising the power of eminent domain the federal government uses its own rules with respect to property and compensation. (*Kohl v. United States*, 91 U. S. 367, 374, 23 L. Ed. 449; *State of Nebraska v. United States*, 164 F. 2d 866.) These may or may not be the same as the rules applicable in the state where the property is situated. The states may have different rules and change them from time to time. See *Pennsylvania Railroad Co. v. Miller*, 132 U. S. 75, 33 L. Ed. 267, 10 S. Ct. 34; *Chicago v. Taylor*, 125 U. S. 161, 31 L. Ed. 638, 8 S. Ct. 820.)

Eminent domain is the inherent power of the state to take private property for public use. With that is the duty of the state to pay the owner of the private property for that taken. What constitutes a "taking," and whether the state shall pay for something more than the property taken, is a matter of state law. In this state we have no constitutional limitations upon the taking of private property for public use except that contained in section 4 of article 12, which is not applicable here. A study of the framing of our constitution leads to the conclusion that this was done intentionally. The result is that our legislature is free (except as limited by art. 12, § 4) to determine what property shall be taken for public use and what is meant by the word "taking," and what shall be compensated for by reason of the taking. A study of our statutes and decisions discloses the word "take" or "taken," as used in our law of eminent domain, means the acquiring of possession and the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides. With respect to payment, the rule of our decisions is that when a party exercising the right of eminent domain takes the whole of one's property it pays the full price therefor. When it takes only a part of the owner's property it pays the full price for the part taken and such damages as result to the

owner's property by reason of the fact that a part of it is taken. Owners of other property nearby or adjoining that which is taken are not entitled to receive any compensation, though in fact they may sustain some loss or injury, such being regarded as consequential and *damnum absque injuria.*

But we shall not pursue the matter further. After having examined the authorities cited by counsel on both sides, and many suggested by those cited, a tentative opinion was prepared in these cases. On considering this the court concluded that the rights of the respective parties may best be determined by an examination of the statute under which the levee was constructed and our former decision in *Loomis v. City of Augusta,* supra.

Analyzing the statute, it obviously gives a city authority to protect the city, its inhabitants, and public and private property within the city, from floodwaters or waters which overflow from natural watercourses which are not navigable. Section 635 authorizes such a city to "acquire by condemnation and eminent domain, or purchase, . . . the land and easements necessary to construct . . . levees . . ." In these cases the city had acquired by purchase all of the land and easements upon which to construct the levee except two city lots, found to be of the value of $250. Had the city purchased those lots, at whatever cost, the city would not have been relieved from the provisions of section 639, which requires it to "appoint three disinterested householders of the said city to assess all damages to any and all property that will be injured or damaged by reason of said improvement." Such injury or damage is not limited to the land or easements upon which the levee was constructed. It was necessary that the procedure with respect to that appointment and the giving of notice and hearing of claims presented should be followed. The procedure was followed. Within the time fixed by section 642 four persons filed written objections and presented claims: Ira T. Foster, whose successor, Ira M. Foster, is the plaintiff in 36,915; Lawrence L. Wilson, plaintiff in 36,916; Catherine Carter, plaintiff in 36,919, and M. S. Loomis, plaintiff in 36,921. Notice was given for the hearing of objections to the appraisers' report, as provided by section 640, and a hearing was had thereon, as provided by section 641. The objections were overruled and the claims denied by the governing body of the city. The claimants appealed to the district court. There all the claims should have been considered as one case and heard by

the court and the judgment of the court certified to the city clerk. Hence, as we examine the statutes now, we think those claims should have been heard and determined as provided by section 643. That view is fortified by section 644, which provides that the city may issue bonds for the cost of the improvements and the damages occasioned by reason thereof. We think it clear that the statute contemplates the hearing of the objections to the report of the appraisers and the determination of any damages of the character mentioned in section 639 before the bonds were issued. We take note of the fact that the damages claimed by the objectors, filed with the city clerk to the report of the appraisers, aggregate $52,000. We note, also, that some of the land alleged to have been damaged is situated a mile or more to the north and west of any part of the levee. If damages claimed by those who filed objections had substantial merit, a question upon which we express no view, persons owning land to the south of those who made objections for a mile or more south of the levee, and those owning lands south and east of the levee, could have made similar claims, the aggregate of all of which claims could well have amounted to several times the amount of damages claimed by the objectors. Certainly, all such claims for damages, if made, as required by section 642, might have been so great that the city would have felt it necessary to abandon the project. In any event the city was entitled to know its liability, if any, for such damages so the amount thereof could be included in its bonds issued, as required by section 644. This is the only way the statute provides for the payment of such damages and the costs of the improvement.

Reëxamining our opinion in *Loomis v. City of Augusta,* supra, we think it is inaccurate in three respects: *First,* in treating the matter as being governed by the law of eminent domain. Under section 635 eminent domain was to be used, if necessary, only to acquire the lands and easements necessary to construct a levee. Section 639 provides for considering the class of claims not recoverable in eminent domain. *Second,* in not permitting the objectors to have a hearing in the district court upon their appeal taken under section 643. *Third,* in determining questions of law the trial court had held that each separate objector was entitled to a separate trial by jury in district court. The judgment of the trial court in that respect should have been reversed with directions for all of the appeals to the district court to be heard as one case by the court, as provided

by section 643. No jury trial was authorized by the statute. In these respects the opinion is disapproved.

The opinion did leave the remedy to the objectors open by holding that a decision on the above point would not prevent their subsequent recourse "to whatever remedial right was originally available." The remedial rights of the objectors originally available were to have their objections heard on appeal by the district court. That right should not be denied now. Their objections and claims were for permanent damages to their real property by reason of the construction of the levee. Persons entitled to be heard are those who made the objections within the time authorized by section 642.

There is nothing in the statute which makes the city liable in damages to the land, improvements or crops, or farm machinery resulting from a flood some years after the levee was constructed. In their respective petitions plaintiffs alleged the city left openings in the levee at Highway No. 54 and at the tracks of the St. Louis and San Francisco Railroad Company which were filled with sand bags at the time of the flood. When the case was here before in *Loomis v. City of Augusta,* supra, the abstracts disclosed that the trial court treated the levee as a continuous structure. Nothing was said in the abstracts or briefs about any openings being left. Both the trial court and this court treated the levee as a continuous structure. Plaintiffs were not damaged by the fact that those openings were left to be filled at the time of floods. We do not take it into account here. The right to claim and receive damages arising from the construction of the levee accrued to the owners of the real property at that time and not to subsequent owners.

In view of what we have said the cases before us should be disposed of as follows: In case No. 36,915 the judgment of the trial court should be affirmed with directions that the plaintiff amend his petition to conform to our interpretation of the statute and of the opinion in *Loomis v. City of Augusta,* supra. In this case the objection and claim for damages was filed with the city clerk by Ira T. Foster, who appealed to the district court, where the present plaintiff was substituted conditioned that on the trial of the case he will be required to prove that he acquired the claim either by assignment or gift from Ira T. Foster (p. 42 of abstract in *Loomis v. City of Augusta,* supra).

In case No. 36,916 the judgment should be affirmed with directions that plaintiff amend his petition to conform to our interpreta-

tion of the statute and of the opinion in *Loomis v. City of Augusta,* supra.

In case No. 36,918 the judgment should be affirmed with directions that plaintiff amend her petition to conform to our interpretation of the statute and of the opinion in *Loomis v. City of Augusta,* supra.

In case No. 36,921 the judgment of the trial court should be affirmed with directions that plaintiff amend his petition to conform to our interpretation of the statute and the opinion in *Loomis v. City of Augusta,* supra, and he may include therein the property described in his objection and claim for damages originally filed with the city clerk. It appears that on November 5, 1942, a part of this land was conveyed to L. W. Loomis and part of it conveyed to M. L. Loomis. The plaintiff in this action may make such settlement with those grantees as may be proper between them.

The plaintiffs in cases Nos. 36,917, 36,919, 36,920 and 36,922, not having filed claims with the city clerk, as provided by section 642, the judgment of the trial court should be reversed with directions to sustain the demurrer to the petition and to dismiss the action, since the right to recover is statutory. It is so ordered.

Hoch, J. (concurring in result, but dissenting in part from statements made in the opinion): I agree with the result reached in this case and in large part with what is said in the opinion. I concur in the conclusion that in *Loomis v. City of Augusta,* 151 Kan. 343, 99 P. 2d 988, we incorrectly construed the statute (G. S. 1935, ch. 12, ¶¶ 635 to 646) and that it contemplates recovery for the class of claims here involved. Also, that since a statutory remedy had been made available to them, the claimants were required to observe the procedural steps provided in the statute and that those who did not do so forfeited their right to be heard, under the statute.

The construction now given to the statute provides the basis for the disposition made of the instant appeals. But the opinion goes further and discusses the question of "taking," under the constitutional provision relating thereto, and also questions relating to condemnation under eminent domain proceedings and common-law rights incident thereto. While the statements may not be regarded as essential in the instant decisions, I feel impelled to record here that I am not prepared to say that there can be no "taking" in the

## APPENDIX "A"

constitutional sense except as to property the title of which is acquired under eminent domain. And more particularly am I not willing to say now that in the absence of specific statutory provision therefor, "owners of other property nearby or adjoining that which is taken (by condemnation under eminent domain) are not entitled to receive any compensation though in fact they may sustain some loss or injury, such being regarded as consequential and *damnum absque injuria.*" I am not unmindful of the many cases in which recovery has been denied for damages denominated "consequential." Without quibbling as to the appropriateness of the term "consequential" as used in some cases, I think it may fairly be said that such cases relate in most instances to damages incidental and more or less remote in character, as for example, the added inconvenience for ingress and egress resulting to other property owners. But where land is substantially damaged directly as the planned or inevitable result of a project such as flood control or diversion, I do not subscribe to a broad and unqualified rule that in no case can there be recovery in the absence of a statute specifically providing therefor. Possibly I read too broadly some statements made in the opinion. In any event I prefer, in dealing with such questions, to await situations where their determination is required.

I am authorized to say that Mr. Justice Wedell concurs in these views.