J. J. YODER and FANNIE YODER, *Appellants,* v. CITY OF HUTCHINSON, KANSAS, *Appellee* and *Cross-Appellant.*

No. 38,061

ELTON E. GILES, *Appellant,* v. CITY OF HUTCHINSON, KANSAS, *Appellee* and *Cross-Appellant.*

No. 38,062

JOHN W. BRADEN, *Appellant,* v. CITY OF HUTCHINSON, KANSAS, *Appellee* and *Cross-Appellant.*

(228 P. 2d 918)

Opinion filed March 20, 1951.

*J. Richards Hunter* and *Harry H. Dunn*, both of Hutchinson, argued the cause, and *Walter F. Jones*, of Hutchinson, was with them on the briefs for the appellants.

*Wesley E. Brown* and *Robert J. Gilliland*, both of Hutchinson, argued the cause, and *Donald C. Martindell*, *William D. P. Carey*, *Edw. B. Brabets*, *John F. Hayes*, *C. William Miller*, *Robert C. Martindell* and *Fred C. Littooy*, all of Hutchinson, were with them on the briefs for the appellee and cross-appellants.

The opinion of the court was delivered by

THIELE, J.: The underlying question involved in these appeals is the nature and extent of damages recoverable by a landowner where proceedings in eminent domain under G. S. 1949, 26-201 to 210 inclusive, have been had under the authority of flood control statutes, which, as amended now appear as G. S. 1949, 12-635 to 12-646 inclusive.

Although a more detailed reference is later made to the statutory authority therefor, it suffices here to state that in 1946 the city of Hutchinson initiated proceedings for the construction of flood control works of some magnitude and which extended beyond the city limits and in order to acquire lands and easements necessary for that purpose, sometime in that year commenced a proceeding in eminent domain in the district court of Reno County, as a result of which commissioners were appointed, and, under procedure of which no complaint is presently made, the commissioners appraised the lands taken and assessed other damages done to the landowners and filed their report on July 8, 1946. In due time several of the landowners deeming themselves aggrieved appealed to the district court. Although not expressly so stated, apparently each appeal was docketed as a separate action in the district court as is provided by G. S. 1949, 26-205.

In appeal No. 38,060 it appears that at the time the condemnation proceedings were commenced A. W. Lancaster and wife

owned the land in question and appealed from the award made. Subsequently they sold the land to J. J. Yoder and Fannie Yoder and assigned to them all rights in the appeal. Thereafter and on October 11, 1949, the Yoders filed a bill of particulars alleging their ownership of a tract of about 305 acres being one mile east and west and one-half mile north and south and lying about two and three-quarters of a mile northwest of the city, its suitability for cultivation, the number and location of the improvements on the land, and that a strip 300 feet wide across the west half was taken for flood control purposes and that such condemnation cut their land in two, and that the strip taken was to be used for the purpose of erecting a dike or levee near its east edge and a ditch to the west thereof and that an earthen ramp constructed partly on their land on the south would be erected on either side of the levee to permit travel over the ditch and levee along the county road. And they alleged their damages as to the lands taken and as to the lands not taken. We need not note the city's motion to strike parts of the bill of particulars, which was sustained in part. Subsequently the city filed its answer admitting the taking of the land and alleging Yoders' purchase subsequent thereto. It then alleged that the right of way was taken under G. S. 1935, Ch. 26, Art. 2, as amended; that the plaintiffs sought to recover damages occasioned by the construction of the improvement in addition to the damages done to the owners by reason of the taking of their land; that plaintiffs were not entitled to recover damages occasioned by the construction of the improvement, but only to damages caused by the taking; that under G. S. 1935, 12-639, the city had appointed appraisers to assess damages to property that would be injured or damaged by reason of the flood control improvement and would, at the time of assessment take into consideration the benefit, if any, that said property would receive by virtue of the improvement, and if the benefit was equal to or greater than the injury or damage to the property, no damages would be allowed. The city also made allegations concerning the nature and character of the lands in question; that they were subject to overflow and that the proposed improvement would not materially increase flood damage. Allegations that the landowners could minimize their damages will not be set forth. The city prayed that the plaintiffs have and recover only the value of the lands taken and other damages done by appropriation and that they be allowed nothing for injury or

damage to the property by reason of the construction of the improvements. The plaintiffs' motion to have stricken the allegations as to what they paid for the land was sustained and in other parts was denied.

With the issues thus joined, the parties joined in a motion to have "certain legal questions" determined in advance of trial. The first question contained thirteen lettered paragraphs which presented detailed factual situations which need not be set forth here and inquired whether each situation was proper for consideration by the jury in determining damages in condemnation proceedings. The second question contained four subdivisions, stated alternatively, but the purpose of which was to procure a ruling on whether certain damages would be recoverable under G. S. 1935, 26-201, *et seq.,* or under G. S. 1935, 12-639. The third question, in substance, was whether evidence of the price paid by the Yoders to the Lancasters would be admissible and the fourth question was whether the city might show that the Yoders could minimize their damages by the use of culverts and drain pipes.

In a summary way it may be said the trial court in answering held that evidence would be admissible to show the matters covered by·the first question; that evidence would not be admissible to show flood damages which would only be recoverable under G. S. 1935, 12-639 as covered by the second question; that the city could not introduce evidence as to the purchase price as covered by the third question; and that the city could introduce evidence that plaintiffs could minimize their damages, as covered by the fourth question.

The landowners appealed to this court from adverse rulings on the motions to strike, from the rulings on questions No. 2 and No. 4, and from all adverse rulings, and the city cross-appealed from the adverse rulings on the motions to strike, from the rulings on questions No. 1 and No. 3 and from all adverse rulings.

In appeal No. 38,061 the procedure was substantially as noted above. The land involved consisted of a tract of about 77 acres, the west 17 acres being taken by the condemnation. The property was about one-half mile west of the city limits and fronted on Seventeenth Avenue extended west and which was a part of the county highway system. Motions to strike by both parties were sustained in part. Under questions of law submitted the trial court held that in the condemnation proceedings evidence would be re-

ceived as to the value of the land taken and damage to the land not taken, but evidence would not be received as to damages from the construction of a proposed ramp in the highway to permit crossing the levee and ditch and obstructing ingress and egress, and that such damages, if any, must be through settlement with the city or through the procedure provided by G. S. 1935, 12-639; that it was not proper in the condemnation proceedings to consider, as a factor reducing the value of the land not taken, any damage that would result from change of grade required to provide a ramp, either under G. S. 1935, 26-201, *et seq.*, or 12-639. Appeals by both parties followed.

In appeal No. 38,062 Andrew Graber and wife were the owners of the involved land when condemnation was had. They appealed and subsequently sold to Braden, who was substituted as plaintiff. The land involved was a tract of two acres facing north on U. S. Highway 50 and a strip 60 by 132 feet was taken from the front thereof to provide right of way for the purpose of erecting a ramp necessary to permit crossing over the ditch and levee immediately to the west. The bill of particulars set out in detail the location of improvements, use of the land for operation of a storage yard for heavy earth moving equipment and that means of ingress and egress were affected. Upon issues joined, questions of law were submitted. Under its ruling the trial court held that evidence as to the ramp as obstructing ingress and egress would not be taken into consideration but that plaintiff might introduce evidence as to the best and most profitable use of the land on the date of taking. Appeals by both parties followed.

It is first noted that the rulings on motions to strike were not the equivalent of demurrers and also that no final judgment has been rendered in the several appeals. The rulings complained of are not now the subject of appellate review.

It is also noted that although the appeals arise from proceedings had in condemnation proceedings and that ordinarily questions of law would be confined to such proceedings, actually the questions propounded are in an effort to obtain a declaration of what may be shown not only under condemnation proceedings but under proceedings under the flood control statutes mentioned.

As far as the record discloses proceedings had under the flood control statutes have not been completed and no appeals therefrom have been taken. Our action in considering the present appeals is

not an approval of the procedure followed, but in view of the situation presented the appeals will be considered.

Our review of the statutes above mentioned is not intended to be exhaustive, but sufficient only to dispose of these appeals. The original act authorizing cities to erect improvements for the purpose of protection against flood waters, herein referred to as the flood control statute, was Laws 1917, Ch. 87, which later appeared as R. S. 1923, 12-635 to 12-646 inclusive, and as now amended appears as G. S. 1949, 12-635 to 12-646. The first section has been amended on a number of occasions, but as it existed in 1946, when the present improvement plan was initiated it was provided that the governing body of any city might "acquire by condemnation and eminent domain, or purchase" lands and easements within the city limits or within ten miles thereof necessary to construct drains, canals and artificial watercourses, to widen or straighten existing drains and watercourses, to construct levees and embankments, to change and raise the grades of streets and alleys and generally to do all things necessary to protect the city and public and private property from flood and damage by overflow of natural and artificial watercourses. This section was amended by Laws 1947, Ch. 109, to provide that the city might acquire the necessary lands and easements "by condemnation and eminent domain, under the provisions of this act or in the manner prescribed by article 2 of chapter 26 of the General Statutes of 1935 and acts amendatory thereof and supplemental thereto." It is here noted that when the city initiated its project in 1946, it proceeded to condemn under G. S. 1935, Ch. 26, Art. 2, as is disclosed by the several answers it filed. Other parts of the section as amended incorporated the provisions above noted as well as for cooperation with the federal government. We are not concerned with the latter. Later sections of the act provide for adoption of certain resolutions, for an engineering survey, for plans, an estimate of costs and other requirements, the engineer to make and file duplicate reports, one of which is to be sent to the state corporation commission for its examination and approval. Upon approval of the report by the governing body of the city, the division of water resources and the state corporation commission, the work may proceed, as provided in the statute. It is provided by G. S. 1949, 12-639, that the governing body of the city is authorized to appoint three disinterested householders of the city "to assess all damages to any and all prop-

erty that will be injured or damaged by reason of said improvement;" that in fixing damages the appraisers shall take into consideration the benefit, if any, the property would receive by reason of the improvement, and that before entering upon their duties the appraisers shall first take and subscribe an oath to faithfully perform their duties and to personally view and examine "all lots and pieces of ground, the buildings thereon, rights of way, roadbeds, bridges, culverts, depot grounds, grades, streets . . . and all other property liable to be injured or damaged by reason of said improvements" and file their written report with the city clerk. By subsequent sections provision is made for notice of hearing, hearing and determination and for a final order by the governing body of the city, as well as provision for appeal to the district court under conditions set forth. Later provisions concerning issuance of bonds and for special assessments are noted, but need not be set forth.

As has been noted above, the flood control statute as now amended expressly states that condemnation proceedings may be had under G. S. 1935, Ch. 26, Art. 2, as amended. Such amendments as were made to that statute were by Laws 1937, Ch. 227 and Ch. 228, and our review of the statute will be as it appears in G. S. 1949, 26-201, *et seq.* Under section 201 provision is made that when the governing body of any city deems it necessary to appropriate private property for enumerated purposes, it shall cause certain preliminary acts to be had and done, and after making an order that appropriation of the lands is necessary, shall file a written application to the judge of the district court, setting out a description of the lands sought to be taken and the benefit district and praying for the appointment of three commissioners to make an appraisement and assessment of damages. Under section 202 provision is made that the commissioners shall give notice of the time and place when the appraisement will be made, and that they shall "appraise the value of the lands taken and assess the other damages done to the owners of such property," and for making of reports, and a final report, all of which shall be in writing and filed in the office of the city clerk. Under section 203 the duties of the commissioners are specified. Under section 204 it is the duty of the city clerk, upon the report being filed in his office, to prepare and deposit a copy with the city treasurer, and if there be deposited with the city treasurer for the benefit of the owner or owners the amount of the

award, the treasurer shall certify the fact upon the report and pay the awards to the persons entitled. The title to lands condemned shall vest in the city upon publication of its resolution condemning the same; and upon recording the report, certified as provided, in the office of the register of deeds, the right to possession shall vest in the city. Under section 205 any aggrieved landowner may appeal from the award made by filing written notice of appeal with the clerk of the court in time and manner as set forth in the statute. Under section 206 the city is given the right, within ten days from the filing of the report, to adopt a resolution abandoning the condemnation, or to appeal therefrom, the conditions of the appeal being stated. Other sections of the statute require no present notice.

In *Cow Creek Valley Flood Prevention Ass'n v. City of Hutchinson,* 166 Kan. 78, 200 P. 2d 279, this court considered certain phases of the present improvement project, and in *Loomis v. City of Augusta,* 151 Kan. 343, 99 P. 2d 988, as modified in *Foster v. City of Augusta,* 165 Kan. 684, 199 P. 2d 779, considered the flood control statute above mentioned, but none of those decisions determined the questions presented in the present appeals.

Putting aside for the moment the trial court's rulings that damages for change of grade were not recoverable under the condemnation statute nor under the flood control statute; that evidence as to a ramp as obstructing ingress and egress would not be considered in the appeals under the condemnation statute, and that evidence as to the price paid by the Yoders for their land would not be received and that evidence concerning minimization of damages would be, it is clear, generally speaking, that the trial court concluded that in condemnation proceedings all that the landowner could recover was the value of the land taken and the damages to the land not taken, and that any other recoverable damages would have to be recovered by other proceedings under the flood control statutes. Is such a conclusion warranted in view of the statute?

It was early held, and over the years the rule has been, that a municipal corporation is a creation of law and can exercise only powers conferred by law and take none by implication, and that the only power it may acquire in addition to that expressly granted is the power necessary to make effective the power granted. See *State v. Hannigan,* 161 Kan. 492, 498, 170 P. 2d 138, and cases cited. In the appeals before us, the only statute relied on as authorizing

the city to go beyond its own limits and acquire property by gift, purchase or the exercise of eminent domain was G. S. 1949, 12-635 to 12-646. As has been pointed out at the time the city initiated the improvement, the statute authorized acquisition by "condemnation and eminent domain" without specifying the particular statute under which that right was to be exercised. The city alleged that it proceeded under G. S. 1935, Ch. 26, Art. 2, as amended. And as has been noted the flood control act has been amended to that effect.

We need not discuss the doctrine that the two statutes are *in pari materia* for by its terms the flood control statute made the eminent domain statute a part of it. The eminent domain statute here involved does provide that the commissioners shall "appraise the value of the lands taken and assess the other damages done to the owners of such property" but it does not specify in any detail whatever just what the items of damage may be. The flood control statute is specific. It authorizes not only acquisition of lands and easements, but the performance of specific works including change of grades and by 12-639 provides for the assessment of "all damage to any and all property that will be injured or damaged by reason of said improvement," and for taking into consideration the benefit, if any, that said property will receive, as provided in that section.

In view of the fact that the right of eminent domain may be exercised either under the flood control act or under the condemnation act, we think it logically follows that regardless of the manner in which the right is exercised, the same standard for measuring the damages is applicable and that the standard set and the items included are those specified in the flood control act.

No purpose will be served by detailing the thirteen instances set forth in question No. 1 of the motion in appeal No. 38,060. We agree with the trial court that evidence thereon will be competent. We need not go into detail concerning the instances wherein the trial court held that certain damage would not be recoverable in the condemnation appeals, but would be in proceedings under the flood control act. In our opinion evidence, if otherwise competent, is receivable in the condemnation appeals to cover all damages contemplated by the flood control statute.

We note the city's contention that the rule is that in the absence of a constitutional or statutory provision authorizing it, an abutting property owner is not entitled to recover damages from the state,

county or city because of the change of grade of an existing highway or street, in support of which *Glover v. State Highway Comm.,* 147 Kan. 279, 292, 77 P. 2d 189, and other authority is cited. We shall not discuss the rule, its applicability or any exceptions, at any length. The flood control statute, among other things, empowers the city in making the improvement to change the grade of streets, and further provides that the landowner may recover all damage to his property injured or damaged by reason of the improvement. By reason of such provisions the rule contended for cannot be held to deny recovery here. Without elaboration, we further hold that if the erection of ramps leading to any bridges that might span the ditches dug or levees constructed, causes damages by interference with means of ingress and egress or other recoverable damage, evidence pertaining thereto is admissible.

In the Yoder case (appeal No. 38,060) we are of the opinion the trial court ruled correctly that evidence as to the amount paid by the Yoders to the Lancasters for lands involved was not admissible. While we recognize the rule contended for by the city that sale of real property under ordinary circumstances is some evidence of value, provided that the time of sale is not too remote, and that the instant sale is not a forced sale, all we know from the record is that in one transaction the Yoders purchased the lands and an assignment of Lancasters' right in the appeal taken by them and that, under the circumstances, was not to be said to be a sale in ordinary course. The city makes some argument that the Yoders alleged the fair market value of the land was a certain amount, which is correct. The argument is that their deed bears a certain amount of revenue stamps evidencing a lesser value and that the difference represents the value of the appeal. The argument is based on matters not pleaded. Whatever may be the rule under other circumstances, we think what the Yoders paid for lands and a lawsuit cannot be said to be any evidence of the value of the lands.

In the Yoder case (appeal No. 38,060) the city alleged that the landowners could minimize their damages by the construction of an overpass or the levee provided they used certain culverts or drainpipes of certain required sizes. A question was framed as to whether the city might offer evidence to that effect, which the trial court answered in the affirmative.

We shall not review the arguments presented. The record does not disclose with any particularity whatever just how extensive

any part of the proposed improvement will be. We do not propose to indulge any assumption that in constructing the improvement the city will be so remiss that any damage will be done the landowner that might or could be avoided, nor that it will fail to do all things necessary to minimize the amount of damages it must pay, or stated conversely, we are not going to assume that it will so construct the levee or other part of the improvement as to cause great damage leaving it to the landowner to minimize that damage by doing works of construction which it may have been the primary duty of the city to do. As a trial of the appeal develops, evidence as to necessary damages may or may not become competent but we are of the opinion that prior to any hearing of the appeal an answer to the question should not have been made.

The several actions are remanded to the trial court for further proceedings not inconsistent herewith.